NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ELISEY E. MARTUSHEFF,<br><br>　　　　　　　　Appellant,<br><br>　　　v.<br><br>STATE OF ALASKA,<br><br>　　　　　　　　Appellee. | Court of Appeals No. A-12793<br>Trial Court No. 3PA-16-00938 CR<br><br>O P I N I O N<br><br>No. 2674 — September 4, 2020 |

Appeal from the District Court, Third Judicial District, Palmer, William L. Estelle, Judge.

Appearances: Michael Horowitz, Kingsley, Michigan, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Glenn J. Shidner, Assistant District Attorney, Palmer, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, Harbison, Judge, and Mannheimer, Senior Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

In April 2016, while Elisey E. Martusheff was incarcerated at the Matanuska-Susitna Pretrial Correctional Facility, he asked a corrections nurse whether he was going to receive any medications. When the nurse said no, Martusheff launched a container of urine and feces at the nurse. The nurse was hit by this waste, and it also splashed on two other corrections officers who were standing nearby.

Based on this incident, Martusheff was convicted of three counts of first-degree harassment — one count for each of the corrections employees.

A defendant commits the crime of first-degree harassment if, acting "with intent to harass or annoy another person", the defendant "subjects another person to offensive physical contact" with feces or various body fluids, including urine. *See* AS 11.61.120(a)(5) (which defines the basic crime of harassment by offensive physical contact) and AS 11.61.118(a)(1) (which raises the degree of the crime if the offensive contact is by feces or bodily fluids).

At trial, Martusheff's attorney conceded that Martusheff acted with the intent to harass or annoy the corrections nurse when he threw the urine and feces at him, and that Martusheff was therefore guilty of the count of first-degree harassment involving the nurse. But the defense attorney argued that Martusheff was not guilty of the other two harassment charges involving the corrections officers — and Martusheff renews that argument on appeal.

The issue here is how to interpret the harassment statute. As we just explained, each charge of harassment required the State to prove that Martusheff acted "with intent to harass or annoy another person" and that Martusheff "subject[ed] another person to offensive physical contact".

Martusheff argues that this crime is committed only when these two elements involve the *same* person — *i.e.*, when a defendant intends to harass or annoy another person and the defendant subjects *that person* to offensive physical contact. The

State, on the other hand, argues that if a defendant acts with the intention of harassing or annoying another person, the defendant commits the crime of harassment if the defendant takes action that subjects *any person* to offensive physical contact — even if this physical contact is with an unintended victim (*i.e.*, not the same person that the defendant intended to harass or annoy).

At Martusheff's trial, the trial judge adopted a slightly modified version of the State's interpretation of the statute. The trial judge instructed the jury that if Martusheff intended to harass or annoy any person (and remember, Martusheff conceded that he intended to harass or annoy the nurse), then Martusheff could properly be convicted of a separate count of harassment for each person who was hit by his waste, so long as the State proved that Martusheff was at least reckless regarding the possibility that this other person would be subjected to contact with this waste.

As we explain in this opinion, the wording of the harassment statute is ambiguous on this point, and the legislative history of the statute does not directly address this point. To the extent that this legislative history is pertinent to the question raised here, it suggests that Martusheff's interpretation of the statute is correct — that the legislature envisioned that the victim of the offensive physical contact would be the same person who was targeted by the defendant.

When the wording and the legislative history of a criminal statute do not resolve a question of statutory interpretation, we are required to construe the statute against the government.[1] We therefore interpret the harassment statute to mean that the person who is subjected to the offensive physical contact must be the same person whom

---

[1] *See*, *e.g.*, *Whiting v. State*, 191 P.3d 1016, 1023 (Alaska App. 2008) ("To the extent that a statute defining criminal liability remains ambiguous even after we subject it to recognized methods of statutory construction, we must resolve that ambiguity against the government.").

the defendant intended to harass or annoy. And for this reason, we reverse Martusheff's convictions on the two counts involving the corrections officers who were standing near the nurse. We affirm Martusheff's conviction for harassment of the nurse.

*Our analysis of the harassment statute*

Some Alaska criminal statutes clearly state that the victim of the crime need not be the same person whom the defendant intended to hurt. For example, Alaska's first-degree murder statute declares that a defendant commits that crime if, acting "with intent to cause the death of another person", the defendant "causes the death of *any* person".[2] Similarly, a defendant commits robbery if, in the course of taking (or attempting to take) property from the immediate presence and control of another, the defendant uses or threatens the immediate use of force "upon any person" for the purpose of preventing or overcoming resistance to the taking, or for the purpose of compelling "any person" to engage in conduct that will aid the defendant's taking of the property.[3]

On the other hand, some Alaska criminal statutes — such as our stalking statute and one clause of our third-degree assault statute — clearly state that the victim of the crime must be the person whom the defendant targeted (or a family member of the targeted victim).[4] And Alaska's kidnapping statute contains both types of provisions:

_____

[2] AS 11.41.100(a)(1)(A). Our second-degree murder statute and our first-degree assault statute contain provisions that are worded in an analogous way; *see* AS 11.41.110(a)(1) and AS 11.41.200(a)(2).

[3] AS 11.41.510(a).

[4] *See* AS 11.41.270(a) and (b)(1) & (b)(5) (stalking), and AS 11.41.220(a)(2) (third-degree assault by making repeated threats to cause death or serious physical injury to another

(continued...)

– 4 – 2674

provisions that require proof that the defendant's actions were directed toward the targeted victim, as well as provisions that speak of instilling fear in either the targeted victim or a "third person". [5]

The provision of the harassment statute that is at issue in Martusheff's case, AS 11.61.120(a)(5), is worded in a way that falls between these two poles. The two operative clauses of this provision — "with intent to harass or annoy another person", and "subjects another person to offensive physical contact" — do not clearly specify whether the person who is subjected to the offensive physical contact must be the same person that the defendant intended to harass or annoy. And the statute makes sense when it is read either way.

The harassment statute was enacted as part of the 1978 revision of the Alaska Criminal Code. The legislative commentary's description of this statute does not resolve the question raised here. The commentary simply states that paragraph (5) of the statute "covers subjecting a person to offensive physical contact if done with an intent to harass or annoy". [6]

Likewise, when the staff counsel for the legislature's Criminal Code Revision Subcommission, Barry Stern, explained the "offensive physical contact" provision to the House Judiciary Committee in January 1978, he did not directly address the issue raised in the present case. However, Mr. Stern's description of the statute

---

[4] (...continued)
person, if the defendant is acting with the intent of placing that person in fear that they or a family member will suffer death or serious physical injury).

[5] *See* AS 11.41.300(a)(1)(A), (B), (C), and (F).

[6] Commentary to Alaska's revised criminal code, 1978 Senate Journal, Supp. No. 47 (June 12), p. 97.

suggested that the person who was subjected to the offensive physical contact was the same person that the defendant intended to harass or annoy.

Stern first explained that the "offensive physical contact" provision was intended to cover conduct that did not cause any physical pain (because any conduct that caused pain was already covered by the assault statutes), but which would have been a battery at common law — conduct such as slight shoving or spitting. Stern then explained that, initially, the "offensive physical contact" provision was drafted to cover any touching of another person if done "with reckless disregard for the offensive, provocative, injurious, or insulting effect". However, Stern told the Committee that the provision had been narrowed — "redrafted to require [an] intent to harass or annoy the person, and the person has to be subject[ed] to offensive physical contact."[7]

Stern's repeated use of the words "the person" in this last part of his explanation suggests that a defendant's intent to harass or annoy had to be directed at the same person who was subjected to the offensive physical contact.

This interpretation of the "offensive physical contact" provision of the statute — *i.e.*, interpreting the phrase "another person" as meaning the person who was the target of the defendant's conduct — is consistent with the way "another person" is used in the other provisions of the harassment statute.

Two other subsections of the harassment statute use the phrase "another person" in contexts where the phrase clearly means "the person whom the defendant intended to harass or annoy". Subsection (a)(1) of the statute declares that a defendant commits harassment "if, with intent to harass or annoy another person", the defendant "insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response". And subsection (a)(2) of the statute declares that a defendant commits

---

[7] Minutes of the House Judiciary Committee's consideration of House Bill 661, January 28, 1978, pp. 4–7.

harassment "if, with intent to harass or annoy another person", the defendant "telephones another and fails to terminate the connection with intent to impair the ability of that person to place or receive telephone calls".

In short, both Barry Stern's testimony to the House Judiciary Committee and the wording of these two sibling provisions of the harassment statute indicate that the drafters of the statute understood the phrase "another person" to mean the person who was the target of the defendant's effort to harass or annoy.

This conclusion is further supported by the fact that our "offensive physical contact" provision is derived from the mid-1970s version of the Oregon harassment statute, ORS § 166.065(1)(a). Like subsection (a)(5) of Alaska's harassment statute, the former Oregon harassment law provided that "[a] person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he ... [s]ubjects another to offensive physical contact". [8]

We could find no Oregon cases where Martusheff's issue of statutory interpretation was raised. However, the commentary to the Oregon statute declares that this statute was derived from a New York statute (the pre-1992 version of New York Penal Law § 240.25, now renumbered as Penal Law § 240.26). [9] And this New York harassment provision clearly stated that the person who was subjected to the unwanted physical contact had to be the person whom the defendant was targeting.

(Under the New York statute, a defendant was guilty of harassment "when, with intent to harass, annoy or alarm another person", the defendant "strikes, shoves, kicks or otherwise subjects *such other person* to physical contact, or attempts or threatens to do the same".)

---

[8]    Quoted in *State v. Sallinger*, 504 P.2d 1383, 1384 (Or. App. 1972).

[9]    *See* Oregon Criminal Law Revision Commission, *Proposed Oregon Criminal Code, Final Draft and Report* (July 1970), Commentary to Article 26, section 223.

Although the original version of the Oregon harassment statute used the ambiguous "another person" phrasing, the statute was reworded in the mid-1980s so that it now contains New York's unambiguous phrasing: a person commits the crime of harassment in Oregon "if the person intentionally ... [h]arasses or annoys another person by ... [s]ubjecting *such other person* to offensive physical contact".

Finally, we note that several other states have enacted criminal statutes that prohibit the throwing of feces or bodily fluids, and the laws of these other states clearly specify that the person who is subjected to unwanted contact with feces or bodily fluids must be the person whom the defendant intended to "assault", "harass", or "alarm". [10]

For these reasons, the State's proposed interpretation of the harassment statute — *i.e.*, the State's suggestion that the statute covers both intended and unintended victims — is a doubtful reading of the statute. While there might be valid policy reasons to write a broader statute, both the wording of the harassment statute (read as a whole) and the legislative history of the "offensive physical contact" provision of the statute suggest that the drafters wrote a narrower statute — a statute which requires proof that the person who was subjected to the offensive physical contact was the target of the defendant's effort to harass or annoy.

In sum, the State's proposed broader interpretation of the "offensive physical contact" provision of the harassment statute is, at best, only arguable. And because the meaning of this provision remains ambiguous or unclear even after it has

---

[10] *See* Montana Statute § 45-5-214; New Hampshire Statute § 642:9; New York Penal Law § 240.32; Ohio Statute § 2921.38; Oregon Statute § 166.070; and Texas Penal Code § 22.11(a).

been subjected to legal analysis, the law requires us to construe the statute against the government. [11]

We therefore interpret AS 11.61.120(a)(5) and AS 11.61.118(a)(1) as requiring the State to prove that the defendant intended to harass or annoy the person who was subjected to the offensive physical contact.

The State argues that even if the harassment statutes are construed in this manner, we should still affirm all three of Martusheff's harassment convictions because the evidence presented at trial was legally sufficient to support findings that Martusheff acted with intent to harass or annoy not only the nurse, but also the two corrections officers who were nearby.

However, as we explained earlier in this opinion, the trial judge instructed the jurors that, so long as the jurors were convinced that Martusheff acted with intent to harass or annoy the *nurse* (something that Martusheff conceded at trial), Martusheff could also properly be convicted of harassing the two corrections officers, even if Martusheff did not intend to harass or annoy the two officers (so long as Martusheff was at least reckless regarding the possibility that his waste would hit the two officers).

In other words, the trial judge erroneously told the jurors that if they accepted Martusheff's concession that he intended to harass or annoy the nurse, it was irrelevant whether the State proved that Martusheff acted with intent to harass or annoy the two corrections officers.

Because of this erroneous jury instruction, we must reverse Martusheff's harassment convictions involving the two corrections officers even if the evidence at Martusheff's trial might be legally sufficient to support a finding that he intended to harass or annoy these two officers.

---

[11] *See Wooley v. State*, 221 P.3d 12, 19 (Alaska App. 2009); *State v. ABC Towing*, 954 P.2d 575, 579 (Alaska App. 1998).

*Martusheff's claim of evidentiary error at his trial*

Martusheff raises one additional claim in this appeal: a claim of evidentiary error at his trial. Because we are reversing two of Martusheff's harassment convictions on other grounds, and because, at trial, Martusheff conceded that he was guilty of the one remaining count of harassment (the count alleging that he acted with intent to harass the nurse), we need not resolve Martusheff's claim of evidentiary error.

*Conclusion*

We REVERSE Martusheff's harassment convictions involving the two corrections officers who accompanied the nurse. We AFFIRM Martusheff's conviction involving the nurse.